IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOSEPHINE HURT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV846 |
| | ) | |
| | ) | |
| RHA HEALTH SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, appearing pro se, initiated this action in Guilford County Superior Court on August 22, 2017, against her former employer, RHA Health Services, Inc. ("RHA"), alleging wrongful termination based on age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112. (ECF No. 1-2 at 1–6.) Defendant removed the case to this Court on September 21, 2017, (ECF No. 1), and Plaintiff's age discrimination claim was dismissed by Order of this Court on July 27, 2018, (ECF No. 18). Before the Court are Plaintiff's and Defendant's cross-motions for summary judgment related to Plaintiff's sole remaining claim of wrongful termination based on disability discrimination. (ECF Nos. 22, 27.) For the reasons set forth below, Defendant's motion for summary judgment will be granted and Plaintiff's motion will be denied.

I.  BACKGROUND

RHA operates a network of group homes for people with intellectual, physical, and developmental disabilities throughout North Carolina and the Southeast. (ECF No. 23-1 ¶ 2.) Plaintiff was hired by RHA on January 11, 2016 to serve as a Qualified Professional ("QP"). (*Id.* ¶ 4.) As a QP, Plaintiff was tasked with ensuring the four group homes under her management "complied with health department regulations, . . . preparing the homes for compliance inspections, and ensuring that the residents' basic needs, including clothing, food, and transportation, were adequately provided." (*Id.* ¶¶ 4, 5.)

On or about March 1, 2016, while Plaintiff was still completing her training, she was excused from work for a skin rash. (*Id.* ¶ 6.) Although she was initially diagnosed with scabies, Plaintiff was later diagnosed with chickenpox. (ECF No. 23-12 at 7, 13.) She was admitted to Wake Forest Baptist Medical Center for a total of twenty-two days, from March 4–14 and March 17–29. (ECF Nos. 23-5, 23-7.) Upon her discharge on March 29, 2016, her treating physician instructed her to "remain out of work until evaluated by her Primary Care Provider within the next 7 business days." (ECF No. 23-7.) On April 6, Plaintiff's primary care physician instructed her to remain out of work until April 18, 2016. (ECF No. 23-8; ECF No. 23-12 at 17.)

Throughout March and April, during the period when Plaintiff was experiencing her health problems, she kept RHA informed about her condition and potential return dates. (*See* ECF No. 23-12 at 7, 10–11; ECF No. 23-1 ¶ 9; ECF No. 28-1 at 1.) During this time, Plaintiff was on "unprotected medical leave" from RHA, because she was not eligible for protected leave under the Family and Medical Leave Act ("FMLA"). (ECF No. 23-1 ¶ 7; ECF No. 23-

2

4.) Further, although Plaintiff's responsibilities were generally being covered by one or two other QP's, "the group homes Plaintiff had been hired to oversee struggled throughout Plaintiff's month-long absence." (ECF No. 23-1 ¶ 8.) On April 5, after one of the group homes Plaintiff was assigned failed a "mock survey" by the RHA Quality Assurance team, "RHA's HR department made the decision . . . that it needed to fill Plaintiff's position." (*Id.* ¶¶ 8–9.) RHA terminated Plaintiff the next day. (ECF No. 28-7.)

Each of the parties now move for summary judgment on Plaintiff's remaining claim of wrongful termination based on disability discrimination.[1] (ECF Nos. 22, 27.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party, and "[a] fact is material if it might affect the outcome" of the litigation. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015). The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When reviewing a motion for summary judgment, the court must view the evidence and "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

---

[1] There is also an outstanding application by Plaintiff to proceed in forma pauperis. (ECF No. 25.) Pursuant to a Text Order entered by this Court on December 13, 2018, "[t]he Court will consider Plaintiff's request at the conclusion of this case."

3

In cases where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) (emphasis omitted)). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). The nonmoving party must support its assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 324. The judicial inquiry on summary judgment "thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). Where, as in this case, the Court has before it cross-motions for summary judgment, the Court reviews each of them separately to determine if either party is entitled to judgment as a matter of law. *Rossignol*, 316 F.3d at 523.

## III. DISCUSSION

"Disability discrimination may be proven through direct and indirect evidence or through the *McDonnell Douglas*[2] burden-shifting framework." *Jacobs*, 780 F.3d at 572 (footnote

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

4

added).  Plaintiff does not contend, nor does she appear to point to any direct or indirect evidence of discrimination based on her chickenpox.  (*See* ECF No. 28.)  Therefore, the Court will examine Plaintiff's claim under the *McDonnell Douglas* framework.  *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (explaining that in the absence of direct evidence of discrimination, for plaintiff "to prevail then it must be by using the proof scheme established in *McDonnell Douglas*".)

Under the *McDonnell Douglas* burden-shifting framework, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995).  If the plaintiff succeeds, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action."  *Id.*  Should the defendant satisfy its burden of production, the plaintiff has the final burden to persuade the factfinder that "the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

To establish a prima facie case for wrongful termination based on disability discrimination, a plaintiff must show "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability."  *Jacobs*, 780 F.3d at 572 (alteration in original) (quoting *EEOC v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)).  The burden of establishing a prima facie case of discrimination based on disability is "not onerous." *Ennis*, 53 F.3d at 59 (quoting *Burdine*, 450 U.S. at 253).

5

Defendant argues in its motion that Plaintiff has failed to show that she was disabled or that she remained "qualified" for her employment. (ECF No. 23 at 7–11.) Specifically, Defendant argues that chickenpox is not considered a "disability" under the ADA, and that Plaintiff's indefinite absence made her unable to perform the essential functions of her job. (*Id.*) Plaintiff did not file a response to Defendant's motion; rather, she filed her own motion for summary judgment. (ECF No. 27.) Plaintiff's motion and accompanying brief do not cite any law or make any legal arguments on her own behalf. (ECF Nos. 27, 28.) Nor does Plaintiff respond to the legal arguments made in Defendant's motion. (*See* ECF Nos. 23, 28.) The Court will nevertheless review Defendant's motion and supporting brief to determine whether RHA is entitled to summary judgment as a matter of law. *See Robinson v. Wix Filtration Corp.,* 599 F.3d 403, 409 n.8 (4th Cir. 2010) ("[W]e have previously held that, in considering a motion for summary judgment, the district court must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." (internal quotation marks and emphasis omitted)).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment."[3] 42 U.S.C. § 12102(1). Here, to establish a prima facie case of wrongful termination based on disability discrimination, Plaintiff must establish that her illness was a physical or mental impairment that substantially limited a major life activity. *See id.*; *Jacobs*, 780 F.3d at 572. To do so, Plaintiff must first identify one or more major life

---

[3] The definition of "disability" was broadened in 2008 by the ADA Amendments Act ("ADAAA"). *Jacobs*, 780 F.3d at 572.

activities which her impairment substantially limits. *See Jacobs*, 780 F.3d at 572. Next, there is the question of whether the plaintiff's impairment "substantially limits" that major life activity. *See id.* at 573–74. The "duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(1)(ix) (app.). Courts also consider whether an impairment lasting less than six months is "sufficiently severe" to qualify as a disability under the ADA. *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 330 (4th Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(ix) (app.)); *see also Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 43 (1st Cir. 2018) (considering "factors such as the 'condition, manner, or duration'" of the impairment (quoting 29 C.F.R. § 1630.2(j)(4))); *Willis v. Noble Envtl. Power, LLC*, 143 F. Supp. 3d 475, 481 (N.D. Tex. 2015) (considering three factors, including "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of, or resulting from, the impairment"). "The determination of whether an impairment substantially limits a major life activity requires an individualized assessment." 29 C.F.R. § 1630.2(j)(1)(iv).

Although Plaintiff does not explicitly identify any "major life activity" that her chickenpox substantially limited, Plaintiff does state, "I was disabled during the documented dates in March and April 2016 and was unable to work." (ECF No. 27 at 1); *see* 42 U.S.C. § 12102(2) (defining and giving examples of "[m]ajor life activities" to include caring for oneself, performing manual tasks, seeing, hearing, thinking, communicating, and working, among others); 29 C.F.R. § 1630.2(i) (same). Because "work" is considered a "major life

7

activity," 42 U.S.C. § 12102(2)(a), the Court will address whether Plaintiff's chickenpox "substantially limited" her ability to work.

While the evidence may show that Plaintiff had what may be characterized as a severe case of chickenpox, Plaintiff's condition was neither sufficiently severe nor of a sufficient duration to be considered "substantially limit[ing]," under the ADA. *See* 29 C.F.R. § 1630.2(j). The evidence in the record shows that on March 1, 2016, Plaintiff left work because of a rash and was seen by a doctor at Moses Cone Urgent Care Center ("Moses Cone"), where she was diagnosed with scabies and given a note that said she could return to work on March 3, 2016. (ECF No. 23-12 at 6, 7; ECF No. 23-2.) On March 3, 2016, she returned to Moses Cone because she felt "really tired and sick and weak," and she was given a note that said she could return to work on March 7. (ECF No. 23-12 at 9, 12; ECF No. 23-3.) Plaintiff stated that she was told by the doctor that she needed to see a dermatologist and was given instructions to purchase what she believes were over the counter treatments like Aveeno or oatmeal bath. (ECF No. 23-12 at 8–9.) Plaintiff never made an appointment with a dermatologist. (*Id.* at 10.) Because Plaintiff's condition worsened the next day, on March 4, she sought treatment at Wake Forest Baptist Medical Center ("Wake Forest"). (*Id.* at 12–13.) Plaintiff was diagnosed with chickenpox and hospitalized at Wake Forest from March 4 to March 14. (*Id.* at 13; ECF No. 23-5.) When Plaintiff was released from Wake Forest on March 14, she was given a note that stated that she could return to work "after completion of her new medication (scheduled to end on 3/19/2016) with no activity restrictions." (ECF No. 23-5.) Plaintiff was readmitted to Wake Forest three days later, on March 17, due to "vomiting [and] hot and cold chills." (ECF No. 23-12 at 14.) Plaintiff could not remember the medication that she was

taking, and she states that she "didn't really know a lot about [her] treatments, other than [for] chickenpox." (*Id.*) Plaintiff was also diagnosed with an "acute kidney injury" on March 17, which Plaintiff's daughter claims, in a declaration, was "due to the virus treatment."[4] (ECF No. 28-5 at 8; ECF No. 28-1 at 3.) Plaintiff's daughter also stated that "[Plaintiff] was quarantined for days and it was noted that . . . she had shingles on her right side of her body and in her eyes and her throat." (ECF No. 28-1 at 3.) When Plaintiff was released from Wake Forest on March 29, she was instructed to follow-up with her primary care physician "within the next 7 business days." (ECF No. 23-7.) On April 6, 2016, Plaintiff drove herself about two and one-half hours to Bluefield, West Virginia to see her primary physician. (ECF No. 23-12 at 15–16.) Plaintiff stated she told her doctor "what was going on and that [she] needed a doctor's note to return to work." (*Id.* at 17.) The doctor asked how she felt and if she thought she could go back to work on April 18. (*Id.*) She told the doctor she felt "a little bit weak," but she could go back on the 18th. (*Id.*) Plaintiff further stated that none of the doctors that she had seen during her illness had placed restrictions or limitations on her. (*Id.* at 11.) Specifically, she stated, "I've never been on restriction as far as I can work." (*Id.* at 14.)

It would appear that neither the duration nor the severity, as detailed by Plaintiff, of her chickenpox rise to the level to qualify as a disability as contemplated by the ADA. *See* 29 C.F.R. § 1630.2(j)(1)(ix) (app.) (giving an example of "an individual [that] has a back impairment that results in a 20–pound lifting restriction that lasts for several months" as someone who has a disability pursuant to the ADA). *Compare Summers*, 740 F.3d at 330–31

---

[4] The record does not contain any further information regarding the duration, severity, or symptoms accompanying Plaintiff's kidney injury.

("[A] person whose broken legs and injured tendons render him completely immobile for more than seven months is . . . disabled."), *with Kieffer v. CPR Restoration & Cleaning Serv., LLC*, 200 F. Supp. 3d 520, 537 (E.D. Penn. 2016) ("The common cold is precisely the kind of 'transitory and minor' impairment that is not considered a disability under the ADA." (quoting 29 C.F.R. § 1630.2(g)(1)(3))), *and Leone v. All. Foods, Inc.*, No. 8:14-cv-800-T-27TBM, 2015 WL 4879406, at *6–7 (M.D. Fla. Aug. 14, 2015) (concluding that a plaintiff's eye injury that lasted 20 days did not "substantially limit" any major life activity). In this case, Plaintiff was in the hospital for twenty-two days. (ECF Nos. 23-5, 23-7.) Further, the entirety of her illness, from her first leaving work on March 1 to being cleared to return on April 18, lasted less than seven weeks, with nearly three of the seven weeks following her last hospitalization. (ECF Nos. 23-7, 23-8, 23-1 ¶ 6.) Thus, taking Plaintiff's evidence in the record as true and drawing all reasonable inferences in her favor, while a reasonable juror could find based on the evidence presented by Plaintiff that she may have had a severe case of chickenpox, neither the severity nor duration of her illness would qualify it as "substantially limit[ing]" under the ADA. Accordingly, Plaintiff has failed to establish the first element of her prima facie case—that she had a "disability" under the ADA. *See Summers*, 740 F.3d at 331.

Defendant next argues that Plaintiff was not an otherwise "qualified individual" for her position due to her indefinite, unprotected leave. (ECF No. 23 at 9–10.) "To determine whether a disabled individual is 'qualified,' courts consider: (1) whether the individual can perform the essential functions of the job at issue; and (2) if not, whether any reasonable accommodation by the employer would enable the individual to perform these functions." *Andrews v. Virginia*, 232 F.3d 886, 2000 WL 1532333 (4th Cir. 2000) (unpublished table

opinion) (citing *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994)). Attendance is considered an "essential function" of most jobs, unless the employee can "effectively perform all work-related duties at home." *Tyndall*, 31 F.3d at 213; *see also Works v. Berryhill*, 686 F. App'x 192, 196 (4th Cir. 2017); *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 56–57 (4th Cir. 2002). Further, an employer's duty to provide a reasonable accommodation does not start until the "employee communicates . . . [her] disability and [her] desire for an accommodation." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346–47 (4th Cir. 2013) (citing *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011)). Indefinite leave is not considered a "reasonable accommodation" under the ADA. *See id.* at 346 n.8 ("In leave cases, the accommodation must be for a finite period of leave." (emphasis omitted)); *Bell v. Shinseki*, No. 1:12CV57, 2013 WL 3157569, at *6 (M.D.N.C. June 20, 2013) ("[A]n employer is not required to 'wait indefinitely' for an employee's medical condition to improve." (quoting *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)), *aff'd*, 584 F. App'x 42 (4th Cir. 2014).

Plaintiff has failed to show that she could perform the essential functions of her job, with or without a reasonable accommodation. At the time Plaintiff became ill she was still in training for the position of QP, less than two months after beginning to work at RHA. (ECF No. 23-1 ¶¶ 4, 6.) When asked about her duties as a QP, Plaintiff stated that her responsibilities were "to go into the group homes, . . . keeping [them] ready for inspections, making sure the meals were prepared right, . . . making sure the consumers had adequate clothing, were being fed right, transportation." (ECF No. 23-12 at 3) Plaintiff then stated, "[u]nfortunately, I was not there long enough to learn everything about [the position]." (*Id.*) There is little question based on the duties, as described by Plaintiff and her supervisor, Deborah Foster, that

11

Plaintiff's attendance was necessary to both complete her training as well as to perform the essential functions of her employment. (*See id.*; ECF No. 23-1 ¶ 5 ("[A]ttendance is an essential requirement of this position.").) At the time of Plaintiff's termination on April 6, 2016, she had been absent from work for approximately five weeks on unprotected leave. (*See* ECF No. 23-1 ¶ 6; ECF No. 28-7.) This was nearly as long as she had been employed by RHA, as she worked for just seven weeks before needing to take leave. (*See* ECF No. 23-1 ¶¶ 4, 6.) Moreover, during her absence, Plaintiff changed her date of return no less than three times with the final date being approximately three weeks following her last period of hospitalization. (*See* ECF Nos. 23-2, 23-3, 23-5, 23-8.) While there is no evidence that Plaintiff requested or notified Defendant that a reasonable accommodation would allow her to perform the essential functions of her job, the evidence in the record shows that RHA did attempt to accommodate Plaintiff by providing five weeks of unprotected leave prior to terminating her. As stated above, indefinite leave is not a "reasonable accommodation" under the ADA. *Bell*, 2013 WL 3157569, at *6.

Plaintiff has thus failed to show that she had a disability as defined under the ADA or that she was a "qualified individual" under the ADA, with or without a reasonable accommodation. Accordingly, Plaintiff has failed to establish a prima facie case of disability discrimination under the ADA. *See Jacobs*, 780 F.3d at 572.

Even assuming that Plaintiff could establish a prima facie case, this Court concludes that Defendant has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff. Defendant states that it had to terminate Plaintiff because another QP, who was helping to fill in for Plaintiff while she was on indefinite, unprotected leave, also had to go on intermittent

FMLA leave for chemotherapy treatments. (ECF No. 23-1 ¶ 8.) This situation left Defendant with only one QP trying to cover the responsibilities of three employees. (*Id.*) Further, because Plaintiff had not yet completed her job training, she would have still required additional training upon her return from leave. (*See id.* ¶ 6.) Nor has Plaintiff provided any evidence to show that Defendant's reasons for her termination "were not its true reasons but were a mere pretext for discrimination." *Burdine*, 450 U.S. at 253.

Because Plaintiff has failed to establish at least two of the essential elements of her prima facie case and has also failed to point to evidence in the record showing that Defendant's reasons for terminating her were a pretext for discrimination, Defendant is entitled to summary judgment as a matter of law on Plaintiff's claim of wrongful termination based on disability discrimination. *Id.* In addition, since Plaintiff has no remaining outstanding claims against Defendant, Plaintiff's motion for summary judgment, (ECF No. 27), must be dismissed.

For the reasons outlined herein, the Court enters the following:

**[ORDER TO FOLLOW ON NEXT PAGE]**

**ORDER**

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment, (ECF No. 22), is GRANTED, and Plaintiff's Complaint, (ECF No. 1-2), is DISMISSED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment, (ECF No. 27), is DENIED.

A Judgment dismissing this action will be entered after the Court rules on Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs, (ECF No. 25).

This, the 14th day of May 2019.

/s/ Loretta C. Biggs
United States District Judge